UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Danette Wyndham Cumbee,                )<br>                                                            )<br>            Plaintiff,                              )<br>                                                            )<br>                                                            )<br>    vs.                                                 )<br>                                                            )<br>Kilolo Kijakazi,[1] Acting Commissioner of  )<br>Social Security Administration,           )<br>                                                            )<br>            Defendant.                          )<br>                                                            ) | C/A No. 5:20-3826-KDW<br><br><br><br><br>ORDER |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the Commissioner's decision for the reasons discussed herein.

I.  Relevant Background

    A.  Procedural History

On October 1, 2017,[2] Plaintiff filed an application for DIB under Title II of the Act, alleging a disability onset date of July 26, 2017. Tr. 202-03. Plaintiff's application was denied initially, Tr. 73, and upon reconsideration, Tr. 90. Plaintiff requested a hearing before an

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the named defendant in this action.
[2] Although the Application Summary is dated October 3, 2017, Tr. 202, based on the Disability Determination and Transmittal, Plaintiff's filing date was October 1, 2017, Tr. 73.

Administrative Law Judge ("ALJ"). Tr. 109-10. The administrative hearing was held on May 16, 2019.[3] Tr. 31-57. On September 26, 2019, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act. Tr. 13-24. Plaintiff requested review of the ALJ's decision. Tr. 197-98. After granting Plaintiff two extensions of time, Tr. 8-12, on September 2, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on November 1, 2020. ECF No. 1.

    B.    Plaintiff's Background

Plaintiff was born in June 1968 and was 49 years old on her alleged onset date of July 26, 2017. Tr. 217. In her October 27, 2017 Disability Report-Adult form Plaintiff indicated that she obtained her GED in 2005, did not attend special education classes, and had not completed any type of specialized job training, trade or vocational school. Tr. 222. Plaintiff listed her past relevant work ("PRW") as cashier at KOA Campground (June 2002-April 2007) and warehouse receiver stocker (May 2007-July 2017). *Id.* Plaintiff indicated that she stopped working on July 26, 2017, because of her conditions. Tr. 221. Plaintiff also noted that her conditions caused her to make changes in her work activity on July 15, 2010. *Id.* Plaintiff listed her medical conditions as cervical spine, cervical radiculopathy, chronic migraines, vertigo, high blood pressure, ADD (attention deficit disorder), and acid reflux disease. *Id.* Plaintiff indicated her height as 5'7" and weight as 228 pounds. *Id.* She also indicated that her conditions caused pain or other symptoms. *Id.*

    C.    The Administrative Proceedings

---

[3] Plaintiff requested a postponement of the hearing originally scheduled for January 15, 2019. Tr. 164.

Plaintiff's administrative hearing took place on May 16, 2019 in Charleston, South Carolina before ALJ Edward Morriss. Tr. 31. Plaintiff was present, along with her attorney and Vocational Expert ("VE") Jessica Conard. *Id.*

      1.      Plaintiff's Testimony

In response to questions from the ALJ Plaintiff confirmed her name, social security number, address, and date of birth. Tr. 36. Plaintiff also confirmed that she was 50 years old and had a GED. *Id.*

In response to questions from her attorney Plaintiff testified that she lived with her daughter, and her daughter's husband and children, and Plaintiff's granddaughter. Tr. 37. Plaintiff testified that her daughter did not work and Plaintiff did not do anything to care for her daughter's three children. *Id.* She stated that she had legal custody of her 16-year-old granddaughter from another child and that her granddaughter "takes care of herself." *Id.* Plaintiff confirmed that she began treatment for migraine headaches in 2014 with Dr. Sohn at Medical University. Tr. 38. Plaintiff stated she was provided Botox injections that gave her "some relief." *Id.* Plaintiff testified that without the Botox she would have five or six headaches a week, and with the Botox her headaches were "down to two or three." *Id.* Plaintiff stated that when her insurance ran out in August, she could no longer afford to pay for Botox injections. Tr. 39. She stated that the physician's assistant put her on two medications, but that recently Dr. Sohn prescribed Aimovig, which Plaintiff injects in her stomach once a month. *Id.* Plaintiff stated that she takes two other medications daily for migraines in addition to the monthly shot, and still has migraine headaches "five days a week." Tr. 39-40. Plaintiff testified that there was no particular time of day when her headaches began, and that sometimes she would wake up with a headache. Tr. 40. Plaintiff stated that her headaches can last from four-to-six hours, or into the next day. *Id.* She also noted that she

3

has been prescribed nausea medication. *Id.* Plaintiff testified that she has medication that she takes at the onset of a migraine, and then she goes into a dark room, uses ice packs, and tries to lie down (although nausea sometimes prevents her from lying down). Tr. 41. Plaintiff stated that her family knows not to disturb her when she is isolating due to migraines. Tr. 42.

Plaintiff testified that she also has pain in her neck and right arm, and she had shoulder surgery to repair a "Slat tear" and that "Dr. Schoderbek went in and cut the bicep tendons." Tr. 42. Plaintiff testified that Dr. Worthington "put the metal plate, T5 and T6 level, in the back of [her] neck." Tr. 43. Plaintiff stated that she believed the surgery on her neck and shoulder made the pain worse and it has affected her left leg. *Id.* Plaintiff testified that her leg "goes numb, and it tingles, and [her] toes turn blue." *Id.* Plaintiff stated that her doctor has her wearing compression stockings every day. *Id.* Plaintiff confirmed that the doctors did a vein and artery study but did not find anything specific but they suggested the problem may stem from her surgery. Tr. 44. Plaintiff testified that she was sent back to Dr. Worthington who ordered an MRI; however, Plaintiff has not yet received the results. *Id.* Plaintiff stated that she has pain that goes down her leg "all the time." *Id.* She stated that sitting or standing for long periods of time causes it to get worse. *Id.* Plaintiff testified that she is able to sit for 15-20 minutes before needing to get up and move around, and if she sits too long her left leg will go numb. Tr. 44-45. Plaintiff stated that she needs to "walk around to get the blood flowing." Tr. 45. Plaintiff stated that she has tried physical therapy and has had "nerve shots on both sides of [her] shoulders." *Id.*

Plaintiff testified that she knows how to use a computer, but she is unable to use a computer because of her neck. Tr. 45. She stated that looking down or leaning forward causes the back of her neck to get sore. Tr. 45-46. Plaintiff stated that this included writing or "[a]nything that consists of hands down, [her] neck down." Tr. 46. As an example, Plaintiff noted that she is unable to write

4

a grocery list. *Id.* Plaintiff stated that she tries to exercise by walking around the circle of her cul-de-sac once a day. *Id.* Plaintiff stated that her goal is to walk for 15 minutes. *Id.* Plaintiff testified that because of her leg and her migraine headaches she would not be able to walk twice a day for 15 minutes. Tr. 47. Plaintiff stated that even if she does not have a migraine she lies down during the day because of her leg and neck, and because her medication makes her drowsy. Tr. 47-48. Plaintiff stated that she leaves the house to go to doctors' appointments. Tr. 48. She stated that her daughter does all the driving and Plaintiff elaborated that she has driven in the past, but she is unable to turn her neck all the way to the right. Tr. 48-49. She stated that her doctors' offices are a 20-minute ride from her house and she is unable to drive herself. Tr. 49. Plaintiff stated that she sometimes rides to the grocery store with her daughter "just to get out of the house," but that most of the time she just sits in the car. *Id.* Plaintiff testified that she has friends but, because of anxiety that developed since her father died, she does not communicate with them. Tr. 50. Plaintiff testified that she does not go to church or other meetings regularly, and she does not babysit her younger grandchildren because she "can't lift them, can't physically take care of them." *Id.*

The ALJ resumed questioning of Plaintiff and asked about her activities during a typical day. Tr. 51. Plaintiff testified that she walks, sits and watches TV for 15-20 minutes, and she may fold clothes, but she does not do the laundry. *Id.* Plaintiff stated that her daughter does the cooking, but Plaintiff may make herself a sandwich or soup. Tr. 52.

Plaintiff confirmed that her leg problem is only in her left leg and that the emergency room doctor thought it was a sciatic nerve problem. Tr. 52. Plaintiff testified that she has migraine headaches three-to-four times a week, but that she gets cluster headaches five or six days a week. Tr. 53. She stated that the "[m]igraines last anywhere from four hours, they can last right on through the night to the next day." *Id.* She testified that her neck surgery was performed at Roper

5

by Dr. Worthington in February 2018, and the shoulder surgery was also done at Roper in August. *Id.*

        2.     VE's Testimony

The ALJ identified Plaintiff's past relevant work as receiver/stocker and cashier. Tr. 54-55. The VE classified the cashier job as Dictionary of Occupational Titles ("DOT") number 211.462-010, light, SVP of 2; and the warehouse worker as DOT 922.687-058, medium, SVP of 2. Tr. 55.

The ALJ found Plaintiff to be 50 years old with the equivalent of a high school education and posed the following to the VE:

> Assume I find she can perform light work and would be limited to occasional pushing and pulling of the bilateral upper extremities, would be limited to occasional stooping and crawling, would be unable to climb ladders, ropes, or scaffolds, would be limited to occasional overhead reaching with the right upper extremity and would be limited to frequent lateral and front reaching of the right upper extremity, would also be limited to frequent overhead reaching with the left upper extremity, and frequent handling with the left upper extremity.

*Id.* The ALJ asked if Plaintiff, with those limitations, would be able to perform the past work as a cashier and the VE responded affirmatively. *Id.*

The ALJ asked the VE to assume the same limitations but also assume she would be absent from work an average of two days each month. Tr. 55. The VE testified that Plaintiff would be unable to perform her past job or any other job. Tr. 56.

Counsel asked if the worker would be able to maintain employment if off task 20 percent or more during the day and the VE responded negatively. Tr. 56.

With no further questions, the hearing concluded. Tr. 56-57.

II.    Discussion

    A.    The ALJ's Findings

In his September 26, 2019 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since July 26, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease; and degenerative joint disease of the right shoulder, status post surgery (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally push and pull with the bilateral upper extremities; occasionally stoop and crawl; never climb ladders, ropes, or scaffolds; occasionally reach overhead with right upper extremity; frequently reach laterally and in front with the right upper extremity; frequently reach overhead with the left upper extremity; and frequently handle with the left upper extremity.

6. The claimant is capable of performing past relevant work as a cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 26, 2017, through the date of this decision (20 CFR 404.1520(f)).

Tr. 18-20, 23.

    B.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

7

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C. Analysis

Plaintiff argues: (1) the ALJ failed to follow the "slight abnormality" standard in finding her migraine headaches were non-severe; (2) the ALJ failed to follow the correct legal standard regarding her complaints; and (3) the ALJ erred in not finding her disabled based on the VE's testimony. Pl.'s Br. 1, ECF No. 20.

1. Slight Abnormality Standard

Plaintiff argues the "ALJ failed to follow the 'slight abnormality' standard in finding that Plaintiff's migraine headaches were non-severe." Pl.'s Br. 4. The Commissioner asserts that

substantial evidence supports the ALJ's finding that Plaintiff did not have a severe migraine headache impairment, and that if even if he did err, any such error would be harmless. Def.'s Br. 9-10, ECF No. 22.

Step Two is a threshold determination of whether a claimant has a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms[.]" 20 C.F.R. § 404.1508. Conversely, if an impairment is a slight abnormality or a combination of slight abnormalities that causes no more than a minimal effect on an individual's ability to do basic work activities it is considered to be non-severe. SSR 85-28, 1985 WL 56856 at *3; 20 C.F.R. § 404.1522(a). The regulation provides examples of basic work activities that include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) capacities for seeing, hearing, and speaking;
> (3) understanding, carrying out, and remembering simple instructions;
> (4) use of judgment;
> (5) responding appropriately to supervision, co-workers and usual work situations; and
> (6) dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b). It is the claimant's burden to prove that she suffers from a medically severe impairment. *Bowen v. Yuckert*, 482 U.S. at 146 n.5.

Here, at Step Two the ALJ found that Plaintiff had the severe impairments of degenerative disc disease and degenerative joint disease of the right shoulder, status post surgery. Tr. 18. The ALJ determined that Plaintiff's "venous insufficiency of the left leg, obesity, and migraine headaches are non-severe impairments." *Id.* The ALJ noted that "[w]ith respect to her migraines, the claimant had a negative CT of the head in January 2017 (Ex. 1F/4). She was also consistently found to have normal neurological functioning upon physical examinations and she was consistently noted to be alert, oriented, and in no acute distress during treatment visits (Ex. 3F/28, 40; 4F/15, 27: 5F/7, 10; 11F throughout; 14F/3)." Tr. 18-19. As to all of the identified non-severe impairments, the ALJ determined:

> The record therefore shows that these conditions have either been successfully treated, controlled, stabilized, or otherwise do not more than minimally affect the claimant's ability to perform basic work activities. Therefore, I find these impairments are not "severe" impairments within the meaning of the Social Security Act and Regulations *because there is no evidence that these conditions cause more than minimal limitations on the claimant's ability to perform work-related activities (20 CFR 404.1522 and SSR 85-28).* Moreover, it is the claimant's burden to provide evidence to prove the finding of a medically determinable impairment and the effects of the impairments on the ability to work (20 CFR 404.1512(a)). Despite the finding that the claimant has non-severe impairments, as that term is used by the Administration, any limitations caused by these nonsevere impairments are incorporated in the residual functional capacity set forth below.

Tr. 19 (emphasis added).

The ALJ addressed the slight abnormality standard in his consideration of Plaintiff's non-severe impairments and indicated that he included any related limitations in his residual functional capacity ("RFC") assessment. In order to prevail on her argument, Plaintiff must demonstrate that the alleged disorder significantly limited her ability to perform basic work activities, which she has not done. *See* 20 C.F.R. § 404.1522(a); *Bowen v. Yuckert*, 482 U.S. at 146. While Plaintiff cites to an August 2018 treatment note where she describes her migraine-associated symptoms—which the ALJ also acknowledges in discussing her hearing testimony—Plaintiff does not cite to

12

any medical record that declares that the severity of her migraines impacts her ability to perform basic work activities.

However, even if the ALJ erred in finding any of Plaintiff's alleged impairments are not severe, any such error was harmless. "As long as a claim is not denied at step two, it is generally unnecessary for the ALJ to have specifically found any additional alleged impairment to be severe." *Bryant v. Comm'r, Soc. Sec. Admin.*, No. 2:15-CV-4786-RMG-MGB, 2017 WL 394500, at *9 (D.S.C. Jan. 10, 2017), *report and recommendation adopted sub nom. Bryant v. Colvin*, No. CV 2:15-4786-RMG, 2017 WL 384302 (D.S.C. Jan. 25, 2017)). *See also Martinez v. Astrue*, No. CA 1:11-850-CMC-SVH, 2012 WL 3580675, at *10 (D.S.C. July 30, 2012), *report and recommendation adopted,* No. CA 1:11-850-CMC-SVH, 2012 WL 3582799 (D.S.C. Aug. 17, 2012) ("A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three."). In other words, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." *McClain v. Colvin*, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted). Here, the ALJ found Plaintiff had severe impairments and proceeded to the next step of the sequential evaluation process. Accordingly, any allegation of error in this regard is harmless.

    2.  Plaintiff's Subjective Statements

Plaintiff argues that the ALJ "failed to follow the correct legal standard when he discounted Plaintiff's complaints as inconsistent with the objective medical evidence." Pl.'s Br. 7. She argues that the ALJ's decision does not comply with SSR 16-3p. *Id.*

13

SSR 16-3p provides a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. In the second step the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities. . . ." *Id.* at *4. "In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, the ALJ stated that in making his RFC finding he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." Tr. 20. The ALJ described the two-step process he was required to follow, outlined Plaintiff's hearing testimony, and determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20-21. The ALJ found that Plaintiff's statements regarding her neck and shoulder pain, and other complaints of pain were "inconsistent with the longitudinal medical evidence of record." Tr. 21. The ALJ described the medical records supporting his findings, and also other factors he considered in assessing Plaintiff's complaints of pain. *Id.* These factors

14

included Plaintiff's "daily activities; the nature of the symptoms; precipitating and aggravating factors; the medications and any side effects; and other treatment followed and measures used to relieve the symptoms." *Id.* (citing 20 CFR 404.1529 and SSR 16-3p). The ALJ noted that

> the record reveals largely normal musculoskeletal, neurological, and psychological functioning despite some persistent neck and shoulder symptoms. Furthermore, this evidence is inconsistent with the claimant's alleged difficulties performing her activities of daily living. Additionally, the claimant did not identify any significant side effects with [her] medications that would warrant additional functional limitations. As such, I find that the claimant's allegations are only partially consistent with the objective evidence of record.

Tr. 21-22. The ALJ's decision complied with SSR 16-3p by providing specific reasons for his findings supported by the evidence of record—including Plaintiff's statements regarding her symptoms, and the physicians' opinions.

Plaintiff argues that her case is "governed by the holding in *Arakas*." Pl.'s Br. 9 (quoting *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95-96 (4th Cir. 2020)). She contends that "[h]aving established the existence of combination of impairments, Plaintiff was entitled to rely on subjective evidence to prove her claim of disability." *Id.* The Commissioner argues that *Arakas* is distinguishable from Plaintiff's case, noting that in *Arakas* the court was focused on the plaintiff's fibromyalgia impairment—a disease that often lacks corroborating objective medical evidence. Def.'s Br. 12. In her reply brief Plaintiff asserts that her "migraines are similar to fibromyalgia in the fact that neither can be established by an objective test . . . ." Pl.'s Reply 5, ECF No. 26. The Commissioner cites to SSR 19-4p, a ruling for evaluating cases involving primary headache disorders. Def.'s Br. 12-13.

The Social Security Administration provided notice of SSR 19-4p on August 26, 2019 and therefore, although not cited by the ALJ, it was in effect at the time of the ALJ's September 26, 2019 decision. This ruling provides guidance on how to evaluate primary headache disorders, such

15

as migraines, in disability claims. *See* SSR 19-4p, 2019 WL 4169635 at *2 (Aug. 26, 2019). The ruling notes that regulations require medically determinable impairments be established by objective medical evidence from an acceptable medical source; "a person's statement of symptoms, a diagnosis, or a medical opinion" will not be used to establish the existence of a medically determinable impairment; and a finding of disability will not be made "based on a person's statement of symptoms alone." *Id.* The ruling indicates that a primary headache disorder is established as a medically determinable impairment "by considering objective medical evidence (signs, laboratory findings, or both)" from an acceptable medical source. *Id.* at *5. The ruling also notes that "the extent to which the person's impairment-related symptoms are consistent with the evidence of record" will be considered and that "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." *Id.* at *8.

Here the ALJ cited to a January 2017 CT scan, and to multiple physical examinations with normal neurological functioning to support the non-severity of Plaintiff's migraines. Tr. 18. The ALJ did not err in considering objective evidence in assessing Plaintiff's headaches. *See Ruehl v. Kijakazi*, No. 2:20CV3846, 2021 WL 4046432, at *7 (D.S.C. Aug. 6, 2021) (unpublished) (observing that "courts in this circuit have repeatedly found no error where the ALJ relied in part on normal diagnostic and exam findings to discount the severity of a claimant's headaches") (collecting cases), *report and recommendation adopted*, 2021 WL 4037481 (D.S.C. Sept. 3, 2021) (unpublished). Indeed, the court finds that the ALJ did not discredit Plaintiff's subjective complaints by relying solely on the objective medical evidence. In his discussion of Plaintiff's RFC, the ALJ noted Plaintiff's hearing testimony that describes the same migraine symptoms Plaintiff recounted to her doctor. Tr. 20. Furthermore, he noted that other factors he considered in

16

assessing her complaints of pain and other symptoms. Tr. 21. Plaintiff's allegation of error is dismissed.

### 3. Testimony of the VE

Plaintiff's final allegation is that the ALJ erred in not finding her disabled based on the testimony of the VE. Pl.'s Br. 9. Plaintiff asserts that had the ALJ relied on the VE's response to his second hypothetical regarding absences from work, he would have determined she was incapable of performing her past work or any other work. *Id.* at 14. Plaintiff argues that substantial evidence does not support the ALJ's finding that she could perform her PRW "[b]ased upon legally proper hypothetical questions, and considering the record taken as a whole[.]" *Id.* at 15. The Commissioner argues that substantial evidence supports the ALJ's Step Four determination and "the ALJ was permitted to disregard the VE's testimony about more significant limitations in his decision." Def.'s Br. 14-15.

It is a claimant's burden to present evidence of disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) (generally setting forth a claimant's burden to produce evidence of a disabling impairment and the Agency's right to deny a claim for lack of evidence); *Blalock v. Richardson,* 483 F.2d at 774.

> A vocational expert may be used at steps four and five to assist "in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a vocational expert's opinion to be "relevant or helpful," it must be responsive to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that the record supports. *Id*.

*Britt v. Saul*, 860 F. App'x 256, 263 (4th Cir. 2021). "The Fourth Circuit Court of Appeals has held that if a limitation 'does not affect [the] ability to work, . . . it [is] appropriate to exclude it

17

from the hypothetical tendered to the vocational expert.'" *Marion v. Comm'r, Soc. Sec. Admin.*, No. 2:16-CV-3285-CMC-MGB, 2018 WL 3120646, at *10 (D.S.C. Jan. 30, 2018), *report and recommendation adopted sub nom. Marion v. Berryhill*, No. 2:16-CV-3285-CMC, 2018 WL 1324503 (D.S.C. Mar. 15, 2018) (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)).

At the administrative hearing the ALJ used a VE to opine on jobs Plaintiff could perform given her vocational profile. In his first hypothetical the ALJ included certain exertional, postural, and manipulative limitations. Tr. 55. The VE testified that with those limitations Plaintiff would be able to perform her past work as a cashier. *Id.* In his second hypothetical, the ALJ added that the individual "would be absent from work an average of two days each month." *Id.* The VE testified that with that limitation Plaintiff would be unable to perform her past job or any other job. Tr. 55-56. Quoting her testimony from the administrative hearing, Plaintiff contends that based on "the debilitating effect" of her migraine headaches she "would likely miss more than two days per month." Pl.'s Br. 14. Plaintiff argues that the ALJ's second hypothetical "is more consistent with the evidence, including the testimony of Plaintiff and her treatment records." *Id.*

As discussed previously, the ALJ considered the medical records when determining Plaintiff's migraines to be non-severe, and he considered her testimony regarding her migraines when discussing his RFC assessment—which did not include a restriction regarding absences from work. While the ALJ could use the VE to assist in determining whether there is available work that Plaintiff can perform, the ALJ was not obligated to accept or rely on all of the VE's responses.

> The RFC, and by extension, any hypothetical question relied upon, need only reflect those limitations that are credibly established by the record. *See Russell v. Barnhart,* 58 Fed. Appx. 25, 30 (4th Cir. Feb. 7, 2003) (citing *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987); *Youkers v. Colvin,* 2014 WL 906484, at *11 (S.D.W.Va. Mar. 7, 2014); *Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d Cir. 2005) (holding that hypotheticals to VEs need not credit every symptom alleged by the claimant, only those that are "medically established"); *Jones v. Barnhart,* 364 F.3d 501, 506-07 (3d Cir. 2004) (holding that, while ALJs may pose multiple hypotheticals, they

> need only credit those that are consistent with the evidence of record). The ALJ is not required to adopt VE testimony in response to limitations that are not supported by the record. *Youkers,* 2014 WL 906484 at *11. *See also Parker v. Colvin,* 2013 WL 4748409 (W.D.N.C. Sept.4, 2013) ("[T]he fact that the Vocational Expert ("VE") responded to a hypothetical posed ... which was not consistent with the ALJ's RFC determination is of no consequence.").

*Baker v. Colvin*, No. 3:13-CV-20376, 2015 WL 5687544, at *9 (S.D.W. Va. Sept. 8, 2015), *report and recommendation adopted,* No. CV 3:13-20376, 2015 WL 5698511 (S.D.W. Va. Sept. 28, 2015). Furthermore, there is no indication from the ALJ's questioning of the VE that the hypothetical regarding absences was related to any finding regarding Plaintiff's headaches.

The court finds that the ALJ's decision is supported by substantial evidence and that he did not err in declining to acknowledge the VE's response to the second hypothetical. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (holding that ALJ is not required to credit VE testimony elicited in response to hypothetical question that includes limitations that ALJ finds not to be credible).

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported by substantial evidence. Based on the foregoing, the undersigned finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

May 19, 2022                                                                    Kaymani D. West
Florence, South Carolina                                                United States Magistrate Judge